UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET** |
| | * | |
| **VERSUS** | * | **NO. 13-77** |
| | * | |
| **VICTOR LACAYO** | * | **SECTION "L"** |

### ORDER & REASONS

Pending before the Court is Petitioner Victor Lacayo's Motion for Compassionate Release. R. Doc. 437. The government opposes the motion. R. Doc. 439. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I.   BACKGROUND

On February 5, 2014, Victor Lacayo appeared before the Honorable Kurt D. Engelhardt and pleaded guilty to Count One of an indictment charging him with conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of Title 21, United States Code, section 846. On May 14, 2014, he was sentenced to 238 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release. R. Doc. 132. Mr. Lacayo was also ordered to pay a $100 special assessment fee. *Id.* at 5. Shortly thereafter, he appealed the judgment and a Federal Public Defender was appointed to represent him. R. Docs. 134, 140. On April 16, 2015, Mr. Lacayo's appeal was dismissed by the United States Court of Appeals for the Fifth Circuit as frivolous. R. Doc. 312. On June 15, 2016, Mr. Lacayo filed a Motion to Vacate Under 28 U.S.C. § 2255, R. Doc. 388, which was denied on February 8, 2018. R. Doc. 400. On June 27, 2018, Mr. Lacayo's case was transferred to this section of the Court. R. Doc. 414. He subsequently filed a Motion to Reduce Sentence, R. Doc. 417, and the motion was referred to the Retroactivity Screening Committee for determination of eligibility, R. Doc. 418. On July 6, 2020, the Court denied the motion on the grounds that Mr. Lacayo was ineligible for a

sentence reduction because he was sentenced under the applicable Career Offender guidelines, which were not impacted by Amendment 782 of the U.S.S.G. R. Doc. 427. Mr. Lacayo then filed a Motion for Compassionate Release Under the First Step Act on April 16, 2020. R. Doc. 420. Because Mr. Lacayo failed to exhaust his administrative remedies, a mandatory prerequisite to seeking compassionate release from this Court, the Court denied the motion without prejudice on May 6, 2020. R. Doc. 425.

## II. PRESENT MOTION

Mr. Lacayo again seeks immediate release from prison based on the ongoing COVID-19 pandemic. R. Doc. 437. On October 9, 2020, Mr. Lacayo filed the instant *pro se* motion for compassionate release after first petitioning the warden for his release. R. Doc. 437-1 at 4. Mr. Lacayo argues that extraordinary and compelling circumstances exist that warrant his release because he suffers from Type II Diabetes Mellitus and high blood pressure while incarcerated at FCC Beaumont. R. Doc. 437 at 2. Mr. Lacayo further argues that his rehabilitation efforts in prison show that if released, he would be a productive citizen. *Id.* at 3. In particular, he points to his participation in various prison programs and the stable home and work environment awaiting him upon release. *Id.* at 3, 5.

The Government opposes the motion. R. Doc. 439. The Government acknowledges that Mr. Lacayo has exhausted his administrative remedies but nevertheless maintains that he failed to establish "extraordinary and compelling circumstances" that justify release. *Id.* at 2. The Government recognizes that during the COVID-19 pandemic, suffering from a medical condition enumerated on the CDC's list of medical risk factors affecting the severity of COVID-19 may amount to extraordinary and compelling reasons *Id.* at 3. The Government also recognizes that Defendant has Type II Diabetes Mellitus, a condition that creates an increased risk of serious illness from COVID-19, and hypertension, a condition that "'might' increase the risk of severe

illness." *Id.* at 5. However, the Government claims that Mr. Lacayo's conditions are well controlled and do not impede his ability to care for himself within the facility. *Id.* Moreover, the Government insists that release would not be appropriate in this case because Mr. Lacayo has failed to "demonstrate that he 'is not a danger to the safety of the community, as provided in 18 U.S.C. § 3142(g).'" Notably, Mr. Lacayo received a second conviction for heroin while previously on supervised release, and accordingly, the Government believes that his early release would "expose the community to serious risk." *Id.* at 7.

Mr. Lacayo has filed a reply. R. Doc. 440. Mr. Lacayo again maintains that he does not pose a threat to society, noting that his drug charges were nonviolent. *Id.* at 2. He also informs the Court that several dorms at FCI Beaumont are in quarantine because many inmates have contracted COVID-19. *Id.* Mr. Lacayo insists that the warden summarily denies all requests for compassionate release and home confinement. *Id.*

### III. LAW & DISCUSSION

#### a. *Exhaustion of Administrative Remedies*

Title 18, United States Code § 3582(c), governing compassionate release, provides:

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c). The Court concludes Mr. Lacayo has satisfied this requirement. Mr. Lacayo submitted a request for compassionate release to the warden on July 31, 2020. R. Doc. 437-1. Mr. Lacayo used the proper administrative procedures, and waited the requisite thirty days before filing this motion. *Id.* The Government also acknowledges Mr. Lacayo has satisfied this requirement. R. Doc. 439 at 1-2.

### b. *Extraordinary and Compelling Reasons*

Section 3582(c)(1)(A) provides that a district court may reduce the grant compassionate release if

> (i) extraordinary and compelling reasons warrant such a reduction; or (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C.A. § 3582(c)(1)(A). Although the relevant policy statement has not yet been amended to reflect the First Step Act of 2018, the policy statement remains instructive to the Court's determination of whether extraordinary and compelling reasons warrant a sentence modification. *See United States v. Reed*, 464 F. Supp. 3d 854, 860 (E.D. La. 2020) (Fallon, J.) (analyzing the discrepancy between the Sentencing Commission's policy statement and the First Step Act). In relevant part, the policy statement explains that an extraordinary condition exists if the defendant suffers from a terminal illness or another "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13 cmt. 1(a).

In cases where an inmate's motion is premised on the ongoing global outbreak of COVID-19, courts typically require an inmate to demonstrate "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *James*, 2020 WL 3567835 (quoting *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases)). "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the

Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.23." *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). Indeed, if general concerns about COVID-19 constituted extraordinary and compelling reasons, all incarcerated individuals would qualify for compassionate release.

In this case, Mr. Lacayo has been diagnosed with diabetes and hypertension. R. Doc. 437-1 at 2. Type II Diabetes Mellitus is identified by the CDC as an underlying condition that increases an individual's risk of severe illness related to COVID-19. *See Conditions: High-Risk Conditions*, CDC (December 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html. Additionally, the CDC has recognized hypertension as a condition that might increase the risk of illness from the virus that causes COVID-19. *Id.* Therefore, Mr. Lacayo has a heightened risk of severe injury or death were he to contract COVID-19.

This is troublesome because according to the BOP website, there are 302 confirmed active cases of COVID-19 at FCI Beaumont Low. *See COVID-19 Cases,* FED. BUREAU OF PRISONS (December 2, 2020), https://www.bop.gov/coronavirus/. In fact, Beaumont Low has the highest number of active COVID-19 cases of all federal prisons in the country. While BOP has implemented measures to ensure inmate safety, it is no question that the crowded nature of prisons creates a substantial risk that the virus will spread among the inmate population. *See* Edmund L. Andrews, *Stanford Researchers Find COVID-19 Spreads Faster in American Jails than on Cruise Ships*, STANFORD NEWS (September 24, 2020), https://news.stanford.edu/2020/09/24/covid-19-spread-american-prisons/ ("([P]risons and jails had become hot spots for the novel coronavirus because there's very little opportunity for social distancing – it's common to have two or more

people per cell – and sanitary conditions are comparatively low.")[1] As recently as November 24, 2020, the unit had only 34 active cases, meaning that there was a 791% increase in positive cases since then. *See* Scott Eslinger, *Beaumont Low Security Fed Prison Has Most Active COVID-19 Cases*, 12 NEWS (December 3, 2020, 3:50 PM), https://www.12newsnow.com/article/news/health/coronavirus/beaumont-low-security-fed-prison-has-most-active-covid-19-cases-among-federal-prisons-after-recent-spike/502-2236816b-090f-47b8-8566-63217dcd4ecb.

On the other hand, these conditions do not currently impact Mr. Lacayo's ability to provide "self-care within the correctional facility" based on the evidence before the Court. *Id.*; *see United States v. Delco*, No. 09-57, 2020 U.S. Dist. LEXIS 141331, at *4-5 (E.D. La. Aug. 7, 2020). The medical records indicate that Mr. Lacayo is taking medications for his diabetes and blood pressure. R. Doc. 439 at 5. Furthermore, the doctors at the facility who evaluated Mr. Lacayo's conditions found that his "illnesses are not life-threatening, nor has he higher morbidity/mortality, compared to his peers." R. Doc. 437-1 at 2. For these reasons, the doctor determined that Mr. Lacayo had "no justifiable/qualifying criteria for RIS [reduction in sentence] consideration." *Id.*

### a. *Safety to Others and Community*

A defendant seeking compassionate release must also demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[2] U.S.S.G. 1B1.13. Mr. Lacayo has two federal narcotics convictions, both for heroin. R. Doc 439

---

[1] A study by Stanford Engineering and Yale School of Medicine researchers found that extremely high transmission rates within a correctional institution, with each infected person transmitting the disease to 8.44 other people. This is 3.6 times faster than the Princess Cruise Ship and over 4 times faster Wuhan. Lisa B. Puglisi MD et al, Estimation of COVID-19 basic reproduction ratio in a large urban jail in the United Stateshttps://www.sciencedirect.com/science/article/pii/S1047279720303471?via%3Dihub.

[2] Section 3142(g) requires the court to consider certain factors, including the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by petitioner's release. 18 U.S.C. § 3142(g).

6

at 7. Notably, the instant offense occurred while the defendant was on supervised release for the first conviction. R. Doc. 437 at 3. This factor weighs heavily in favor of finding that Mr. Lacayo would be a danger to the safety of the community once released. The Court commends Mr. Lacayo's participation in rehabilitative programs; however, at this juncture, the Court remains concerned that Mr. Lacayo's early release poses a risk to society.

### b. Section 3553(a) Factors

Finally, the Court must be satisfied that Mr. Lacayo's release is supported by the factors set forth in 18 U.S.C. § 3553(a). Under Section 3553(a), court must consider factors such as the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence, and the variety of sentences available.

For the reasons discussed above, two factors support Mr. Lacayo's early release from FCI Beaumont in light of the ongoing COVID-19 pandemic: the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). Nevertheless, these factors are outweighed by considerations of "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." Mr. Lacayo, scheduled to be released on February 24, 2030, has served about sixty-eight months of a 238 months' imprisonment. R. Docs. 437 at 2; 439 at 1. As such, he has not yet served 50% of his sentence. R. Docs. 439 at 1; 437-1 at 4. Mr. Lacayo's early release would create a sentencing disparity between him and others with similar convictions, which Section 3553(a) seeks to prevent. *See* 18 U.S.C. § 3553(a)(6). This distinguishes Mr. Lacayo from other instances in which the Court has ordered the BOP to approve compassionate release for defendants who have completed the majority of their sentences. Further, as discussed above, Mr. Lacayo's pattern

of dangerous conduct exposes the community to a serious risk, given that he continued narcotics trafficking while on supervised release. R. Doc. 439 at 8.

## IV. CONCLUSION

Current active COVID-19 cases in Beaumont Low make up more than 18% of the total population.[3] The facility has experienced a huge increase in positive cases over the past weeks, which calls into question the facility's ability to control the spread of the virus. The Court is also cognizant that a high-risk inmate who contracts the virus while in prison will likely face challenges in caring for himself, even if such challenges are not present at this time.

Accordingly, the Court suggests that BOP transfer Mr. Lacayo to a facility with a lower rate of COVID-19. The Court also urges BOP to take advantage of its expanded authority to transfer additional defendants to home confinement through the CARES Act, as FCI Beaumont is experiencing significant levels of infection. *See United States v. Engleson*, No. 13-CR-340-3 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (recognizing that the "ultimate decision of whether to release an inmate to home confinement rests with the BOP"). As Attorney General Barr underscored, this is one of BOP's most important tools to keep inmates safe and to protect vulnerable inmates. *See* William Barr, *Memorandum for Director of Bureau [of] Prisons*, BOP (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf and William Barr, *Memorandum for Director of Bureau of Prisons*, BOP (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

Ultimately, while the Court expresses concern regarding the conditions in Beaumont Low Facility, the § 3553(a) factors weigh against Mr. Lacayo's release. *See United States v. Butler*,

---

[3] Scott Eslinger, *Beaumont Low Security Fed Prison Has Most Active COVID-19 Cases*, 12 NEWS (December 3, 2020, 3:50 PM), https://www.12newsnow.com/article/news/health/coronavirus/beaumont-low-security-fed-prison-has-most-active-covid-19-cases-among-federal-prisons-after-recent-spike/502-2236816b-090f-47b8-8566-63217dcd4ecb.


2020 U.S. Dist. LEXIS 61021, at *6 (S.D.N.Y. Apr. 7, 2020) (weighing defendant's criminal history and threat to the community if released and defendant's limited serving of his sentence over defendant's risk of serious illness related to COVID-19 due to his asthma and heart condition).

Considering the foregoing,

Mr. Lacayo's second Motion for Compassionate Release, R. Doc. 437, is **DENIED**.

New Orleans, Louisiana this 7th day of December, 2020.

_____
Eldon E. Fallon
United States District Judge